STANDARD OIL CO. OF TEXAS
v. MANLEY et al.

No. 12908.

United States Court of Appeals
Fifth Circuit.

Dec 7, 1949.

Rehearing Denied Jan. 13, 1950.

See also 8 F.R.D. 354.

J. C. Hutcheson, III., Houston, Tex., J. Avery Rush, Jr., Houston, Tex., for appellant.

Thomas B. Ramey, Tyler, Tex., Warren G. Moore, Tyler, Tex., J. S. Freels, Sherman, Tex., Ralph Elliott, Sherman, Tex., for appellees.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

This action originated as a suit in trespass to try title of an oil-and-gas leasehold estate in Grayson County, Texas, held by appellant, a Delaware corporation. All parties claim from a common source, namely, The Grand High Court Heroines of Jericho of Texas and Jurisdiction, a Negro fraternal lodge, hereinafter referred to as the Grand High Court. Appellant bases its claim on an oil and gas lease from the Grand High Court dated February 19, 1945. Appellees base their claim on several instruments, the first of which was dated October 16, 1947, in which the Grand High Court purported to convey the entire fee in question to appellee W. H. Harvey. L. B. Manley and the remaining appellees claim under an oil and gas lease that Harvey purported to make to one O. L. Hubbard on the same land on which the appellant claims to have its oil and gas lease.

After all the evidence had been concluded, both parties moved for an instructed verdict. Appellant based its motion on the proposition that, regardless of the validity of its lease, the Grand High Court had ratified it as a matter of law; and its subsequent grantees were estopped to question its validity. Appellees argued that the lease was invalid because it was not duly executed, and that the evidence failed to establish either ratification or estoppel. The lower court granted appellees' motion, and instructed a verdict in their favor. From an ensuing judgment, this appeal was taken. Both appellant and appellees, on presenting their respective motions for an instructed verdict, agreed that it was a question of law as to whether or not there had been a ratification; and we accept their view as to this feature of the case.

The Grand High Court, from which the claim of all parties in this case emanates, is an unincorporated fraternal organization, composed of female relatives of Negro Masons. There are about 440 local lodges known as Local Courts of Heroines, which are subordinate to the Grand High Court. The latter, composed of officers of

the local courts, constitutes the Grand Lodge of this organization, which is governed by a written constitution, and has its headquarters in Fort Worth, Texas. In 1940, the constitution of this organization was amended so as to allow the Grand High Court to convey or transfer property by warranty deed or bill of sale, provided the instrument conveying the property was signed by the Most Worshipful Grand Joshua; the Most Ancient Grand Matron; and the Most Ancient Grand Secretary, whose duty it was to affix the official seal.

The lease under which appellant asserts its claim was acquired for H. H. Coffield (appellant's agent) by Jack Campbell, who was one of many persons hired to contact property owners for the purpose of acquiring oil-and-gas leases. It was purported to have been signed on behalf of the Grand High Court by William M. McDonald, Grand Joshua; R. A. Winn, Most Ancient Grand Matron; and N. S. Mosely, Most Ancient Grand Secretary. The acknowledgment was taken in statutory form by Zalee A. Payne, under her seal, and dated February 21, 1945. It was duly filed for record in the proper office of Grayson County, Texas, and was later assigned by H. H. Coffield to the appellant; the latter paying a $43 bonus, which was accepted by William M. McDonald for the Grand High Court. Appellant also paid the Grand High Court two annual delay rentals of $43 each. These delay rentals were to be paid each year to the lessor if the appellant did not drill for oil.

On October 16, 1947, William M. McDonald, acting for the Grand High Court, conveyed the same property to W. H. Harvey, pursuant to a resolution of the Grand High Court passed at a meeting in June, 1947, authorizing him to sell the land by warranty deed. On November 13, 1947, the Grand High Court, by letter, attempted to return to appellant its check for $129. The latter refused to accept it, and returned the check on November 21, 1947. Harvey then executed an oil-and-gas lease to appellee Hubbard, who in turn assigned it to appellees Manley and Roberts.

■ The lower court found that the lease on which appellant predicates its claim was invalid; and we think this finding was correct, because there was ample evidence to sustain it. It is true that the lease was signed by the Grand Joshua, William M. McDonald, but the Most Ancient Grand Matron and the Most Ancient Grand Secretary did not sign it. The evidence is that the daughter of said secretary signed the lease for her mother, who was ill at the time. The name of the Most Ancient Grand Matron was placed on the lease by Zalee A. Payne, who had no authority to do so. The only method by which property could be conveyed by the Grand High Court was for the deed or other instrument to be signed by three specified officers. In the instant case, only one of these officers signed the lease; and, by virtue of this fact, no title passed to the appellant unless the Grand High Court in some way ratified this unauthorized act of its members. The lower court found that there was no such ratification; we differ from it on this point, in that we are convinced from the acts and conduct of the parties subsequent to the execution of the lease that there was a ratification of such a character as to import validity to the lease, irrespective of the defects in its execution.

■■ The general rule is that, in order to have a ratification, an agent must purport to do something in behalf of his principal; and the principal, with full knowledge of all the material facts, must do something to evidence an intent to approve the unauthorized act. In applying these elements of ratification to this case, we think the Grand High Court did ratify the lease that McDonald purported to make. Undoubtedly, in signing the lease, McDonald purported to act as agent of the Grand High Court; and the latter, by accepting the bonus payment and delay rentals, evidenced an intent to approve McDonald's act. Approval of the unauthorized act may be express or implied; receipt of such benefits from the unauthorized transaction, with full knowledge of the facts, is sufficient approval to meet the test of this particular element of ratification. The only real question of ratification in the instant case is whether or not the

Grand High Court had knowledge of all the material facts. In determining whether such knowledge existed, we must take into consideration the peculiar nature of this association. It would be unreasonable to require that each member of the Grand High Court should have had such knowledge.

The Grand Secretary of said court, on January 21, 1946, drew a draft for $43 on the Merchants and Planters National Bank of Sherman, Texas, which was the depository bank named in the lease. The Secretary carried this on her records as "total collected from oil lease, Sherman Farm." On January 31, 1947, the Grand Secretary, wrote a second letter to the same bank asking it to forward $43, which had been deposited as delay rental from February 19, 1947, to February 19, 1948. The letter referred to the oil and gas lease by date, book and page of the records of deeds, and stipulated acreage. On February 1, 1947, the Bank sent to the Grand High Court a money order in response to its letter for $43. This money was carried on the records as "total collected from oil lease, Sherman Farm." The minutes of each meeting of the Grand High Court for 1945, 1946, and 1947, in the Grand Secretary's report, and in the Auditor's report, show receipt of $43 from an oil lease. In 1946 and 1947, the Secretary's reports further identify the $43 payments as "total collected from oil lease, Sherman Farm." These reports, having been read aloud in open session, were all specifically approved and adopted by the official sessions of the Grand High Court. After each session of said court, the minutes, including the secretary's and auditor's reports, were printed, bound in paperbacked volumes, made available to all members, and sent to each local court.

We are of the opinion that these acts of the Grand High Court amounted to a ratification of the invalid lease, and that it was error to overrule the motion of appellant for an instructed verdict. The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Revers